J. F. BRUBAKER, Appellant,

v.

Robert BRUBAKER, Appellee.

No. 3633.

Court of Civil Appeals of Texas.

Eastland.

May 26, 1961.

E. W. Patterson, Gonzales, for appellant.

Arthur C. Riddle, Luling, Perkins & Zunker, Gonzales, for appellee.

GRISSOM, Chief Justice.

Robert Brubaker sued J. F., or Frank, Brubaker in trespass to try title to a tract of approximately 144 acres of land. Frank Brubaker answered by pleading the 10 year statute of limitation, Vernon's Ann.Civ.St. art. 5510, and by alleging that Robert Brubaker and their sister Dora held title to the land in trust for Frank. In a trial to the court, judgment was rendered awarding Robert the title and possession of the land. Frank Brubaker has appealed.

The record shows that prior to 1939 Frank Brubaker held the title to the land; that he owed approximately $1,000 which was secured by a lien on the land; that he defaulted in payment; that the lien was foreclosed and Robert and Dora on November 10, 1941, obtained a deed from the heirs of the purchaser at the foreclosure sale. The deed to Robert and Dora recited a cash consideration paid of $200 and execution by them of a note payable in eleven installments totaling $1,103.20. It was Frank's contention that when the deed was executed conveying the land to Robert and Dora there was an agreement between them, made in the presence of Mr. Miller, the attorney who handled the matter, that Robert and Dora would take the deed in their names, Frank would make the payments and, when the debt was paid, they would convey the land to Frank. At the time of the trial Dora and Mr. Miller were dead. Robert testified there was no such agreement. Frank testified that he made all the payments. Robert testified to the contrary. Robert testified that he thought the land was rented to Frank by Dora; that he was necessarily away from home making a living and returned only on rare occasions; that Dora would send him money from time to time, apparently income from this land, in the form of checks which he would return to Dora, because she needed it; that he expected Dora to make the payments on the land and pay the taxes from the income therefrom. Frank ·testified that he paid the $200 cash that was paid when the deed was executed. Robert testified that he paid it. Frank testified that he personally paid in cash out of his own pocket all the payments made for the

land. Mr. Miller's son was a lawyer and a partner of his father in his father's lifetime and kept the records for those who sold the land and owned the notes executed by Robert and Dora. He testified that the record showed a cash payment on said indebtedness by Robert of $340 on November 29, 1941; a cash payment on said indebtedness on April 2, 1941, by Robert and Dora Brubaker (by Frank Brubaker) of $103.17; a credit on May 20, 1944, by a check payable to Robert and Dora of $144.87 and cash by Frank of $63. Frank testified that from 1941 to 1951 he rendered the land for taxes in the name of Robert and Dora but that during that period he paid the taxes; that Dora paid the taxes in 1951 and thereafter until her death in 1953 and that Robert had paid the taxes since Dora's death. Frank testified that he had not rendered anything for taxation "as his own property" since 1939; that before 1939 he did. Robert testified to the effect that Dora paid the taxes all the time until her death, although he did not see her do so.

It is undisputed that during all the time in question none of the parties actually resided on the land; that Frank, Dora, their mother and a nephew resided on the mother's farm, which had been the parents' homestead and which adjoins the tract in controversy; that Dora died in 1953, at the age of 60; that Mrs. Brubaker died in 1958 at age 90; that Frank and the nephew continued to reside in the old Brubaker home until the nephew moved away in 1959, leaving Frank there alone; that Frank and Dora never married; that Frank was 66 at the time of the trial; that after Dora's death in 1953 Robert personally rendered and paid all the taxes on the land in controversy. Dora left a will in 1953 leaving her one-half interest in the tract in controversy to Robert. This will was probated as a muniment of title. It is undisputed that Robert holds the record title. It is undisputed that Dora and Frank engaged in the chicken business on the 144 acres during some part of the time in controversy; that Dora furnished everything,

Frank did the work and they split the profits. The evidence shows that during the period in question Robert and Dora executed oil leases on the 144 acre tract; that Dora sold royalty on that land; that they kept said proceeds; that the lessees had "doodlebugging" operations on the land without Frank's permission and Frank made no complaint as to any of said matters.

There was testimony that "after the '40s nothing was raised on the place"; that, although there had at one time been about 35 acres in cultivation, there is now only about 16 acres in cultivation on the tract in controversy; that the fences wouldn't hold cattle the last two years; that Frank and another brother, Forrest, worked the Brubaker homestead off and on and then leased it apparently without consulting Robert; that Frank used his parents' homestead in the same manner as he did the 144 acres in controversy. Frank's nephew was asked if Frank took charge of the 144 acres and acted as if he owned it. His nephew answered that he acted that way everywhere he went.

Frank Brubaker testified that part of the time from 1941 to 1960, the period being unidentified, the fence on the tract in controversy between the Mathews and Hill places and the 144 acres in controversy was not capable of turning ordinary livestock.

Frank says that his brother and sister entered into the alleged trust agreement because they wanted him to stay on the old homestead and take care of his mother and sister Dora. Robert testified that, although Frank lived in the same house with his mother and Dora and a nephew on the mother's farm, Frank wasn't taking care of them. There was testimony from which the court might conclude that at the time Robert and Dora bought the land they also bought some cattle which had also been foreclosed upon and Robert and Dora put them back on the 144 acres and that Robert saw them there whenever he came home for a visit until he missed them in 1959 and

that from 1941 until her death in 1953, while Robert was away from home making a living, Dora managed the land and cattle and Frank acted under her supervision.

The substance of appellant's points is that (1) there is no evidence to sustain the implied findings of the court on which the judgment must be based and (2) that such findings are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. We have carefully studied the entire statement of facts. Applying the rule laid down by our Supreme Court in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, we are forced to the conclusion that the findings are not so against the weight and preponderance of the evidence as to be clearly wrong. On the contrary, we think said findings are amply supported by the evidence. Of course, we also conclude that there was some evidence to support such findings. Appellants points are overruled. The judgment is affirmed.